## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GABRIELLA ZARRELLI,<br><br>　　　　　　*PLAINTIFF*,<br>v.<br><br>ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE, ADTALEM GLOBAL EDUCATION, INC, DR. LUCAS NOLAZCO-SASSOT, individually and in his official capacity, and DOES 1 -<br><br>　　　　　　*DEFENDANTS*. | CASE NO.<br><br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br><br><br>JURY TRIAL DEMANDED |

NOW COMES Plaintiff, Gabriella Zarrelli**,** by and through her attorneys, The Law Office of Keith Altman, with this Complaint against Defendants, and hereby states the following:

## **BACKGROUND**

This is an action seeking damages for Defendants' Breach of Contract, Fraudulent Inducement, Breach of Express Warranty, Negligent Misrepresentation, and Negligence, as well as injunctive relief against Defendant Ross University.

**COMPLAINT**　　　　　　　　　　　　　- 1 -

## PARTIES

1.     Defendant Ross University School of Veterinary Medicine ("Ross University") is a for-profit private career university that confers a Doctor of Veterinary Medicine (DVM) degree, among others. Ross University is incorporated in St. Kitts and is accredited by the American Veterinary Medical Association ("AVMA").

2.     Ross University is a subsidiary company of Adtalem Global Education, Inc., a US corporation.

3.     Ross University receives US federal funding via students who receive federal financial assistance under Title IV of the Higher Education Act.

4.     Ross University has several domiciles in the United States. The domicile of Ross University's Office of Admissions is located in New Jersey. Moreover, Ross University's Office of Student Finance has two domiciles in Chicago, Illinois.

5.     Defendant Adtalem Global Education, Inc. ("Adtalem") is a company incorporated in Delaware, with its headquarters in Chicago, Illinois.

6.     During the times relevant to this case, Adtalem Global Education Inc. was and continues to be the parent company of Defendant Ross University.

7.     Defendant Dr. Lucas Nolazco-Sassot ("Dr. Nolazco") is a professor at Ross University, and he teaches the class of Surgery Lab 2. During the times relevant to this case, Dr. Nolazco was a professor employed by Ross University at its St. Kitts campus.

8.     Plaintiff Gabriella Zarrelli ("Plaintiff" or "Gabriella") was a student enrolled at Ross University in St. Kitts in their Doctorate of Veterinary Medicine program. Plaintiff was also a student in Dr. Nolazco's class.

## JURISDICTION & VENUE

9.     The court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is diversity of citizenship of the named parties. Additionally, this court has subject matter jurisdiction because the amount of controversy exceeds $75,000.

10.     Defendant Adtalem has its headquarters and principal place of business in Chicago, Illinois, transacts business in this District, and

has subjected itself to this Court's jurisdiction through such activity. Accordingly, venue is proper in this District under 28 U.S.C. § 1391.

11.    Defendant Ross University has its headquarters and principal place of business in the nation of St. Kitts. However, this court has personal jurisdiction over Defendant Ross University because Ross University is doing business in the State of Illinois. Ross University's Office of Student Finance is domiciled in Chicago, Illinois, where Ross University receives payments.

12.    Defendant Lucas Nolazco-Sassot is a citizen of Argentina and resides in St. Kitts. Dr. Nolazco is a professor employed by Ross University.

13.    Plaintiff is a citizen and resident of the State of New York.

14.    This action is properly venued in the Northern District of Illinois because substantial part of the omissions giving rise to the claim occurred in Chicago, Illinois.

## FACTUAL ALLEGATIONS

15.    Plaintiff is an extremely ambitious individual, who has strived for academic excellence since high school, where she was awarded many college scholarship opportunities.

16.     Plaintiff obtained a Bachelor of Science degree in Biology from Wagner College. Plaintiff graduated with honors and received several academic awards.

17.     Additionally, Plaintiff has been dedicated to working with and caring for animals her whole life.

18.     Plaintiff suffers from Irritable Bowel Syndrome with Constipation ("IBS-C"). IBS-C is a disorder and chronic condition that affects the large intestine, which is linked to anxiety and depression. IBS-C is a disability which substantially limits one or more of Plaintiff's major life activities.

19.     Plaintiff also suffers from anxiety to the point where she has been prescribed medication.

20.     When Plaintiff decided to go to veterinary school, Plaintiff researched the universities available, including Ross University.

21.     Plaintiff chose Ross University, in part, because of Ross University's statements regarding Ross University's prohibition on the discrimination of students with disabilities, as well as its commitment to accommodate students with disabilities.

22.    As an individual with a disability, this promise by Ross University was a significant factor in Plaintiff's decision to attend Ross University.

23.    In May 2018, Plaintiff started attending Ross University.

24.    Having moved to a different country for the first time in her life, Plaintiff experienced a cultural shock. This contributed to Plaintiff failing her GA I class. Upon retaking the class, Plaintiff obtained a grade of "B+".

25.    At this time, Plaintiff began seeing a therapist, Dr. Bower, to better her mental health, which is of significant importance to Plaintiff's disability.

26.    Additionally, Plaintiff tried obtaining disability accommodations for her disability several times but was repeatedly ignored by Ross University. Plaintiff provided Ross University with three different letters from three independent doctors, each one explaining and confirming Plaintiff's need for accommodations.

27.    Nevertheless, Ross University ignored Plaintiff's request for disability accommodations. This made it impossible for Plaintiff to timely

attend her studies on days when Plaintiff's disability was particularly painful.

28. Shortly after her first semester, Plaintiff's grandmother, who was a second mother to Plaintiff, fell gravely ill and died, striking Plaintiff with severe grief, and worsening of her IBS-C disability.

29. During her third semester at Ross University, Plaintiff experienced a detrimental relationship. The consequential anxiety and depression from this detrimental relationship worsened Plaintiff's IBS-C disability.

30. During that same time, Dr. Bower informed Plaintiff that she would no longer be able to see Plaintiff, and that she would not authorize any other of Ross University's therapists to see Plaintiff either.

31. Consequently, Plaintiff failed another class, Path II, in her fourth semester at Ross University. When Plaintiff repeated the class, she passed it and received a "B" grade.

32. In March 2020, during Plaintiff's fifth semester, Ross University went virtual as a response to the COVID-19 pandemic.

33. The COVID-19 pandemic had severe effects on Plaintiff's mental health, which significantly worsened Plaintiff's IBS-C disability.

34.     Plaintiff struggled with the worsening of her disability. The morning of the exam for Small Animal Med ("SAM") II, Plaintiff was in crippling pain from her IBS-C, which resulted in Plaintiff failing Small Animal Med ("SAM") II, failing her third class.

35.     On December 22, 2020, Plaintiff received a dismissal notice from Ross University for failing three of her classes.

36.     Plaintiff appealed this dismissal on January 6, 2021.

37.     On January 13, 2021, Plaintiff's appeal was denied by the Academic Review Committee.

38.     On January 14, 2021, Plaintiff met with Ross University's Dean Dr. Sean Callanan.

39.     Dean Callanan granted Plaintiff readmission to Ross University on January 15, 2021.

40.     After her readmission, Plaintiff attended a class taught by Dr. Nolazco, Surgery Lab 2 ("SL2"). Much of the class work was to be done in groups.

41.     Plaintiff was late to the group meetings on two occasions due to the lack of accommodations for her disability. Her peers took this as an opportunity to start excluding and bullying Plaintiff.

42.     Plaintiff explained to Dr. Nolazco that her tardiness was due to her disability, which somedays caused Plaintiff severe pain and significant difficulty to move.

43.     Plaintiff attempted to receive help from Dr. Nolazco, but instead of trying to help Plaintiff, Dr. Nolazco endorsed and encouraged the bullying against Plaintiff, particularly from student Kristen McKee. Dr. Nolazco also told the other students to send him Plaintiff's text messages to him if they were not happy about the content.

44.     Dr. Nolazco graded Plaintiff's assignments more harshly than that of her peers and gave her peers the opportunity to criticize Plaintiff openly about minor mistakes.

45.     Additionally, Dr. Nolazco threatened Plaintiff, telling her to not get on his bad side because he would always win and had the power to fail Plaintiff. Dr. Nolazco also called Plaintiff the "weak link" of her group even though he knew of Plaintiff's disability.

46.     Dr. Nolazco did not provide Plaintiff with any guidance on how to improve.  Instead, Dr. Nolazco told Plaintiff that she would find out how she did at the end of the semester.

47.    On June 10, 2021, Plaintiff sent a letter to Dr. Anne French, the Head of Department of Clinical Sciences, asking for her help regarding Dr. Nolazco's behavior towards her.

48.    On June 18, 2021, Dr. French responded to Plaintiff's email defending Dr. Nolazco's outrageous behavior, claiming he only meant to set Plaintiff up for academic success.

49.    Meanwhile, Plaintiff's treatment by Dr. Nolazco continued to worsen, appearing as retaliation for her request for help.

50.    On August 6, 2021, Plaintiff received an email from Dr. Nolazco, yet again threatening that Plaintiff's tardiness, which was due to Plaintiff's disability, would affect her grade.

51.    Dr. Nolazco failed Plaintiff because she was late to class five times, even though Plaintiff passed the course academically, and even though Plaintiff's tardiness was directly due to her disability.

52.    In September 2021, Plaintiff received her dismissal from Ross University. Plaintiff was dismissed from Ross University because Dr. Nolazco failed Plaintiff for being late, even though Plaintiff was late due to her disability; a disability for which Ross University never provided accommodations despite Plaintiff's multiple requests.

53.   These events had and continue to have a profoundly negative impact on Plaintiff's mental well-being and her future career. Plaintiff has been severely emotionally injured by the treatment and discrimination she experienced at the hands of Defendants while she was a student at Ross University.

## FIRST CAUSE OF ACTION
### Breach of Contract
(Against Defendant Ross University)

54.   Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 15-53).

55.   At all relevant times, Dr. Nolazco and Dr. French were employed by Defendant Ross University.

56.   A university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins.

57.   When Gabriella enrolled at Ross University, Gabriella entered into a contract with Ross University. In return for monetary payment, Defendant Ross University was to provide Gabriella with a quality education subject to the terms and conditions created by Ross University. This contract requires Ross University to "provide an

environment free of unlawful harassment or discrimination based upon…disability".[1] The contract also requires Ross University's commitment "to providing reasonable accommodations for qualified students with disabilities".[2]

58.     The contract between Ross University and Gabriella further requires the prohibition of retaliation against a student for reporting discrimination.

59.     Ross University breached this contract with Gabriella when Ross University failed to provide adequate accommodations to respond to her needs. This occurred when Ross University repeatedly ignored Gabriella's requests for accommodations.

60.     Gabriella tried to obtain disability accommodations for her IBS-C disability. Gabriella even provided Ross University with three doctor letters from three independent doctors, explaining Gabriella's need for accommodations. However, Ross University continued to repeatedly ignore Gabriella's requests for accommodations.

---

[1] Ross University School of Veterinary Medicine Student Handbook, Section 1.12.4 Commitment to Non-Discrimination And Equal Opportunity: https://veterinary.rossu.edu/media/21086/rusvm-student-handbook.pdf

[2] Ross University School of Veterinary Medicine Student Handbook, Section 1.12.5.1 Office of Student Disability Services.

61. Thus, Ross University's failure to address and provide Gabriella's several requests for disability accommodations made it impossible for Gabriella to arrive on time to Dr. Nolazco's class when her IBS-C was severe.

62. Ross University also breached the contract when Dr. Nolazco, -an employee of Ross University- denied Gabriella's reasonable request for accommodations in the form of tolerance to arrive some time after the ordinary start time of class. Gabriella provided Dr. Nolazco with a doctor's letter explaining Gabriella's need for accommodations. Nevertheless, Dr. Nolazco failed Gabriella for her "tardiness" to said class, even though Gabriella's tardiness was due to complications of her IBS-C disability.

63. Ross University also breached the contract when Dr. Nolazco, retaliated against Gabriella for reaching out to Dr. French and asked for help regarding Dr. Nolazco's treatment of Gabriella due to her tardiness because of her disability.

64. Ross University's breach resulted in Gabriella being denied the education which she had agreed to and paid to receive, becoming saddled in student loan debt.

65.    As a result of Ross University's breach of the contract, Gabriella is entitled to compensatory damages and restitution in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Fraudulent Inducement
(Against Defendants Adtalem and Ross University)

66.    Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 15-53).

67.    At all relevant times, Adtalem was and continues to be the parent company of Ross University.

68.    Defendants Adtalem and Ross University issued false statements regarding the nondiscrimination and accommodations of people with disabilities in their marketing of Ross University. These statements are known to be false by Defendants Adtalem and Ross University, intending to induce Gabriella (and other students) to choose Ross University over other universities.

69.    Gabriella relied on such false statements and chose Ross University because Gabriella, as a person with a disability, knew she would need to attend a school that would provide accommodations to students with disabilities.

70.   As a result of Gabriella's reliance on Defendants false statements, Gabriella has suffered significant damages by an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### Negligent Misrepresentation
(Against Defendant Ross University)

71.   Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 15-53).

72.   At all relevant times, Adtalem was and continues to be the parent company of Ross University.

73.   Plaintiff entered into a consumer transaction with Defendant Ross University for the purchase of services intended and represented to be subjected to the strategic directions and goals of Ross University.

74.   Every consumer transaction imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

75.   Defendant Ross University misrepresented the accessibility it provides to individuals with disabilities by publishing in its student handbook that Ross University "provide[s] an environment free of unlawful harassment or discrimination based upon…disability", and that

Ross University is "[committed] to providing reasonable accommodations for qualified students with disabilities".

76.    Defendant Ross University knew or should have known that the program offered by Ross University at the St. Kitts campus did not comply with the conditions represented by Ross University, which induced Gabriella to choose Ross University over other schools.

77.    Defendant Ross University's conduct, as alleged above, constitutes a breach of its duty of good faith and fair dealing, in that, among other things, it induced Gabriella to enroll in its DVM program, which Ross University claimed would follow the standards outlined in the student handbook when it knew or should have known that the program would not actually do so. Instead, Ross University provides a lower quality program with less than adequate protections for individuals with disabilities.

78.    As a result of Ross University's conduct and/or the conduct of their employees, Gabriella has been damaged by an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranties
(Against Defendant Ross University)

79.    Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 15-53).

80.    At all relevant times, Defendant Ross University was and continues to be a subsidiary of Defendant Adtalem.

81.    Defendant Ross University expressly warranted that the programs and services paid for by Plaintiff throughout the duration of the program would be subject to the rights and responsibilities outlined in Ross University's strategic directions and goals through their website and their student handbook.

82.    Defendant Ross University, to induce sales, made certain express warranties and representations to Gabriella, including but not limited to, statements made on Ross University's website, and on Ross University's student handbook.

83.    Defendant Ross University systematically misrepresented the services provided by Ross University. Defendant acted with knowledge that the services provided in the program were not following the warranties and representations made by Ross University. By so

acting, Ross University approved of and adopted the misrepresentations in the programs and services provided to Gabriella.

84.     Defendant Ross University knew and expected, or should have known, expected, and intended Plaintiff to rely on Defendant Ross University's warranties.

85.     The representations contained or constituted affirmations of fact or promises made by Defendant Ross University to Plaintiff related to the programs provided, and thus the affirmations of fact or promises became part of the basis of the bargain, creating an express warranty that the program shall conform to the affirmations of fact or promises.

86.     In determining to enroll in Ross University's veterinarian medicine program, Plaintiff reasonably relied on the representations and express warranties of Defendant Ross University.

87.     Because Defendant Ross University's academic program did not conform to Ross University's express representation, Ross University's breached the warranties.

88.     As a foreseeable, direct, and proximate result of the breach of express warranties by Ross University's, Plaintiff suffered injuries and damages as alleged herein.

## FIFTH CAUSE OF ACTION
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act.
### 815 ILCS 505/2
(Against Defendants Adtalem and Ross University)

89.     Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 15-53).

90.     By holding itself out as a university that does not discriminate against students with disabilities, and as a university that holds its employees accountable for maintaining educational programs that are responsive to a wide range of student needs, Ross University made intentional misrepresentations, deceptive acts, and false promises about the true nature of its veterinarian medicine program.

91.     By holding itself out as a global education group that does not discriminate against individuals with disabilities, and as a global education group whose members (including its subsidiaries) are held accountable for maintaining educational programs that are inclusive and do not discriminate against and provide proper accommodations for individuals with disabilities, Adtalem made intentional

misrepresentations, deceptive acts, and false promises about the true nature of its educational programs.

92. Defendant Adtalem and Defendant Ross University usurp public policy to not discriminate against and provide accommodations for people with disabilities. In doing so, Defendants have caused significant damages to its students with disabilities.

93. Defendant Adtalem and Defendant Ross University induced students with disabilities to attend Ross University by falsely representing that Adtalem and Ross Univeristy would not discriminate against students with disabilities. Defendant Adtalem and Defendant Ross University also induced students with disabilities to attend Ross University by falsely representing that Adtalem's education programs and Ross University provide proper accommodations for students with disabilities.

94. By systemically discriminating against students with disabilities despite of Defendants' express promise to not do so, Defendants engaged in a deceptive and unfair trade practices.

95.     By systemically failing to provide accommodations for students with disabilities despite of Defendants' express promise to not do so, Defendants engage in a deceptive and unfair trade practice.

96.     Plaintiff suffered and continues to suffer financial losses due to Defendants' deceptive and unfair trade practices.

## SIXTH CAUSE OF ACTION
### Negligence
(Against Defendants Adtalem, Ross University, and Nolazco)

97.     Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 15-53).

98.     Defendant Ross University has a self-imposed duty to not discriminate against students with disabilities, and a self-imposed duty to provide accommodations to students with disabilities.

99.     Defendant Adtalem has a duty to not discriminate against students with disabilities by holding its subsidiaries and agents to Adtalem's standards and practices.

100.    Defendant Nolazco has a duty of care towards his students to not discriminate against students with disabilities.

101.  Defendants Adtalem, Ross University, and Dr. Nolazco were negligent in performing their duties and failed, neglected, and/or refused to properly and fully discharge their duties by, among other things:

   a) Failing to recognize Gabriella's need for accommodations for her disability due to her IBS-C.

   b) Failing to properly review Gabriella's needs for accommodations for her disability due to her IBS-C.

   c) Failing to provide Gabriella with proper accommodations for her disability due to her IBS-C.

   d) Creating and/or sanctioning policies, patterns, practices, and customs of not providing reasonable accommodations to those with disabilities.

   e) Failing to adequately train and supervise Ross University personnel to properly evaluate and provide reasonable accommodations to those with disabilities.

102.  By their negligent conduct, Defendants Adtalem, Ross University, and Dr. Nolazco have inflicted extreme and severe emotional distress on Plaintiff, who is confronted with an inability to complete her education, practice her chosen profession, earn a living, and to pay her

mounting student loan debts—resulting in significant financial losses due to Defendants' aforementioned conduct. Additionally, Plaintiff has suffered a worsening of her IBS-C symptoms, which has affected her personal wellbeing and her interpersonal relationships.

103. When Gabriella informed Dr. French of Dr. Nolazco's actions towards Gabriella, Defendant Ross University was put on constructive notice of Dr. Nolazco's fitness for employment. Furthermore, Ross University, either through its own inaction or the actions of its employee Dr. French, failed to reasonably investigate the complaints that Gabriella brought to her attention.

104. Since Dr. French oversees the Department of Clinical Sciences, meeting with students to address difficulties with professors is naturally within the scope of the duties of their employment. Thus, the torts committed by Dr. French and Dr. Nolazco occurred when they were acting within the scope of their employment at Ross University, and Defendant Ross University can be held vicariously liable for the compensatory damages that arise from any of the tortious acts committed by Dr. Nolazco and Dr. French.

105.  The negligent conduct of Defendants Ross University and Dr. Nolazco directly and proximately caused the growing emotional, psychological, and physical distress that Plaintiff has suffered. Furthermore, Plaintiff suffers and continues to suffer financial losses due to Defendants' negligent conduct.

106. Defendant Adtalem is on notice of its subsidiary Ross University's systemic breach of its duty to not discriminate against students with disabilities and has failed to act to correct this. The negligent conduct of Defendant Adtalem directly and proximately caused the growing emotional, psychological, and physical distress that Plaintiff has suffered. Furthermore, Plaintiff suffers and continues to suffer financial losses due to Defendant Adtalem's negligent conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant her relief as follows:

(1)  Issue a permanent injunction instructing Defendant Ross University to change Plaintiff's SL2 grade to a passing grade and have Plaintiff's transcript reflect that she passed her seventh semester.

(2)   Compensatory damages for financial loss, mental anguish, and emotional distress against Defendants;

(3)   Punitive damages against Defendants; and

(4)   Such other relief as the Court may deem proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Date: March 10, 2022                    Respectfully Submitted,

Keith Altman (pending *pro hac vice*)
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com